IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| M.M., a minor, by next friend Darin Thomas, and DARIN THOMAS, individually, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 18-423 (MN) |
| RED CLAY CONSOLIDATED SCHOOL DISTRICT, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Samuel L. Guy, Attorney at Law, Wilmington, DE – attorney for Plaintiffs

Michael P. Stafford, Lauren E.M. Russell, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE – attorneys for Defendant

May 15, 2019
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Plaintiffs Darin Thomas ("Thomas") and his daughter M.M. ("M.M.") (collectively, "Plaintiffs") filed suit against Defendant Red Clay Consolidated School District ("Red Clay" or "Defendant") on February 22, 2018 in the Delaware Court of Chancery, alleging a breach of contract and breach of the implied covenant of good faith and fair dealing in connection with an agreement to settle a prior administrative complaint that Red Clay "had failed to provide M. M. with FAPE pursuant to the [Individuals with Disabilities Education Act, also known as] IDEA." (D.I. 1, Ex. A). The case was removed to this Court on March 20, 2018. (D.I. 1).[1] Presently before the Court is Defendant's motion for summary judgment. (D.I. 41). For the reasons set forth below, the Court will grant Defendant's motion.

## I.     BACKGROUND

At the time the Complaint was filed, M.M. was a student attending school in the Red Clay Consolidated School District (D.I. 1, Ex. A ¶ 3).[2] She was served by an Individualized Education Program ("IEP"), and classified as a student with a Moderate Intellectual Disability. (D.I. 44 at A233-34 ¶¶ 4-6). M.M. first enrolled in the District in 2012 and attended the Meadowood Program, an educational program in the District for students with moderate to severe intellectual disabilities, for the 2015, 2016, 2017, and 2018 school years. (*Id.* ¶¶ 3-4). On February 2, 2016, Thomas filed a special education administrative due process complaint against Red Clay alleging

---

[1]     The parties do not dispute that the Court has subject matter jurisdiction over this matter. The agreement was reached through an IDEA-endorsed mediation or resolution process. Specifically, the Agreement states that it was "reached consistent with the Resolution Process under 34 C.F.R. § 300.510, is subject to the provisions of that regulation, and is enforceable in either a state court of competent jurisdiction or United States District Court, pursuant to 34 C.F.R. § 300510(d)(2)." *See also Lejeune v. Khepera Charter School*, 327 F. Supp. 3d 785, 790 (E.D. Pa. 2018).

[2]     According to Plaintiffs, M.M. was a student in the District "through the conclusion of the 2018 school year" but is not "currently attending school within the District." (D.I. 52 ¶ 1).

violations of the IDEA with respect to M.M. (D.I. 44 at A1-16). During the pendency of the administrative process, on June 10, 2016, the parties entered an Agreement and Mutual Release ("the Agreement"). (*Id.* at A119-128). On June 21, 2016, the administrative complaint was dismissed with prejudice. (*Id.* at A48).

The Agreement states, in pertinent part:

> . . . the entering of this Agreement is not an admission by the District that [M.M.] did not receive the education or other services required by law . . .
>
> 2. For and in consideration of the undertakings of [Thomas], as set forth herein, and intending to be legally bound, the District agrees to provide payment or reimbursement for up to a maximum amount of $75,000.00 worth of legitimate education expenses for [M.M.], to be utilized between now and the end of the school year in which [M.M.] turns 21. . . .[3]
>
> 3. Should [Thomas] elect to enroll [M.M.] in a private school or program pursuant to paragraph 2, *supra*, then [M.M.] shall be considered a parentally-placed private school student as that term is used under the IDEA. No payment to, or reimbursement for, private school tuition expenses pursuant to this Agreement shall alter this. This Agreement does not create any obligation on the part of the District to fund a private placement nor may this Agreement be deemed an admission that the District's own schools and programs cannot provide Student with a Free Appropriate Public Education. The Parties further agree and warrant that [M.M.'s] private school shall not be deemed her 'pendant' or 'stay-put' placement in a future dispute between them unless otherwise agreed to by the parties or otherwise determined by an administrative tribunal or court of law.
>
> 4. Should [Thomas] elect to enroll [M.M.] in a private school or program pursuant to paragraph 2, *supra*, then notwithstanding her status as a parentally-placed private school student, the District agrees to (a) furnish [Thomas] with a list of potential transportation providers in the area, and (b) at the election of [Thomas], if the private school or program is located within a 50 mile radius of [Thomas] and [M.M.'s] residence within the District, then to contract directly with a third-party transportation provider to

---

[3] After the execution of the Agreement, Plaintiffs never submitted any payment or reimbursement requests to Red Clay. (*Id.* at A84, A117 ¶ 39).

>provide transportation services for [M.M] to and/or from her private school or program. . . .

(*Id.* at A119-123). Following the execution of the Agreement, Thomas contacted three private schools located in Pennsylvania: Devereux, Elwyn (which runs the Davidson School), and CADES, seeking to enroll M.M. The District communicated via email and phone with Devereux regarding the possible admission of M.M. in June and July of 2016. (*Id.* at A130, A132-135, A137, A181, A183). On August 2, 2016, Devereux declined admission, stating "unfortunately we do not have an appropriate educational program for [M.M.]." (*Id.* at A185). According to Thomas, he received "a call from Devereaux Ms. Maryann she was saying that there weren't any room for [M.M.] at this time due to her age group . . . ." (D.I. 44 at A50).

Following Devereux's decision, Thomas informed Red Clay that he called Elwyn to discuss enrollment for M.M in the Davidson School. (*Id.* at A187). On August 22, 2016, a representative from Elwyn emailed Red Clay indicating that they "would like to issue a letter of acceptance [for M.M.]" but would "need confirmation that Red Clay School District will act as the liaison for [M.M.] while she is a student at Davidson" and would "need a district rep to participate in any IEPs and meeting regarding [M.M.]." (*Id.* at A190). The Elwyn representative then asked whether "the district still will be involved and act as the LEA for [M.M]" because "Davidson require [sic] that the school districts assume the responsibility for students while they are placed [at Elwyn]." (*Id.* at A189). Red Clay replied that "this request for private placement is being made by the family with payment through a legal settlement" and that "Red Clay will not serve as the LEA because we are not seeking private placement." (*Id.* at A192). On August 23, 2016, following this clarification, a representative from Elwyn informed Thomas that "[o]ur policy prohibits us from accepting students without an LEA or district representation" and thus "the Davidson School will not be able to move forward with placement." (*Id.* at A189).

Thereafter, Plaintiff met with a representative of CADES, but "Cade [sic] said they could not accommodate M.M." (*Id.* at A67). In a September 16, 2016 email, a representative of CADES informed Thomas that they "typically do not accept students who require behavioral support because our staff are not trained in behavioral intervention," and that the school had a few questions about M.M. after reviewing her educational records. (*Id.* at A51). Thomas responded that "[M.M.] hasn't had an [sic] report of an episode in months . . . ." (*Id.*).

As noted above, Plaintiffs filed their Complaint in Delaware Court of Chancery alleging breach of contract and breach of the implied covenant of good faith and fair dealing on February 22, 2018, and Defendant later removed it to this Court. (D.I. 1, Ex. A-1). Pursuant to the Court's Scheduling Order, fact discovery ended on October 31, 2018. (D.I. 11). During the discovery period, Plaintiffs served no interrogatories, requests for productions, or subpoenas, and elected to take no depositions. (D.I. 41 at 1). Defendant filed its motion for summary judgment on January 18, 2019. (*Id.*).

## II. <u>LEGAL STANDARD</u>

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact is not genuinely disputed must be supported by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence

4

of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Count I: Breach of Contract

In their Complaint, Plaintiffs allege that Red Clay breached the Agreement by its "failure to comply with the financial obligations it undertook pursuant to the Settlement Agreement." (D.I. 1, Ex. A ¶ 41). Specifically, Plaintiffs contend that Defendant "refused to pay for M.M. to attend other education placements, provide transportation thereto, or otherwise use any of the compensatory funding that is supposed to be available to M.M." (*Id.*, Ex. A ¶ 32).

Under Delaware law, a breach of contract claim requires Plaintiffs to demonstrate (1) a contractual obligation, (2) a breach of that obligation by Defendant, and (3) resulting damage. *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Here, there is no dispute that the Agreement, executed on June 10, 2016, is a valid contract creating obligations between the parties.[4] (D.I. 42 at 4-6; D.I. 49 at 3). Instead, the crux of the parties' dispute centers on what contractual obligations the Agreement created for Defendant. Plaintiffs argue that "Defendant breached the Settlement Agreement by refusing to pay for private placement, sabotaging the admissions process at Elwyn and making the Settlement Agreement's funds 'unavailable' to him." (D.I. 49 at 5). As to the assertions regarding Elwyn, Plaintiffs allege that Defendant sabotaged the admissions process at Elwyn when "it refused to serve as the LEA despite actually being the LEA with respect to Plaintiff and the compensatory fund." (*Id.*).

---

[4] There is no dispute that there was an agreement between Thomas and Red Clay. Red Clay asserts that "although her father executed the Agreement both on his own behalf and on behalf on M.M. in his capacity as her parent and legal guardian, Plaintiff M.M. was not, herself, a signatory to the Agreement and cannot, therefore, proceed with a breach of contract action against Defendant under it." (D.I. 42 at 12). For purposes of this motion, the Court will assume both Thomas and M.M. have standing to sue for breach of contract.

6

To understand the obligations imposed on Defendant, the Court must review and interpret the Agreement between the parties. "Under Delaware law, contract interpretation is a question of law, and the role of the court is to effectuate the parties' intent." *Cato Capital LLW v. Hemispherx Biopharma, Inc.*, 70 F. Supp. 3d 607, 618 (3d Cir. 2014) (internal citations omitted). When interpreting a contract, Delaware courts give priority to the parties' intentions as reflected by the terms located within the four corners of the agreement. *GMG Capital Invs., LC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012). If a contract term is clear and unambiguous, it must be given its "ordinary and usual meaning." *Cato Capital*, 70 F. Supp 3d at 618 (citing *Nw. Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del.1996)). "To be 'unambiguous' a contract clause must be reasonably capable of only one construction." *John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (citing *American Flint Glass Workers Union v. Beaumont Glass Co.*, 62 F.3d 574, 580-81 (3d Cir. 1995)).

Plaintiffs admit that the Count I "claims are based solely on Defendant's refusal to serve as the LEA at Elwyn." (D.I. 49 at 5). Thus, the question is whether the Agreement established an obligation on Red Clay to serve as the LEA for M.M. at a school of her father's choosing. The Agreement states that "[s]hould [Thomas] elect to enroll [M.M.] in a private school or program pursuant to paragraph 2, *supra*, then [M.M.] shall be considered a ***parentally-placed private school student*** as that term is used under the IDEA." (D.I. 44 at A123 ¶ 3) (emphasis added). The Delaware regulations implementing the IDEA define parentally-placed private school students as "children with disabilities enrolled by their parents in private . . . schools . . . other than children with disabilities covered in 45.0 through 47.0" 14 DE Admin. Code § 923.30; *see also* 34 C.F.R. § 300.130. Sections 45.0 through 47.0 "apply only to children with disabilities who are or have been placed in or referred to a private school or facility by a public agency," including an LEA.

14 DE Admin. Code § 923.45; *see also* 34 C.F.R. § 300.45-47. Sections 45-47 of the regulations make clear that LEAs that place or refer students to private schools remain responsible for the provision of FAPE to them while they are there.[5] But those regulations do not apply to parentally-placed private school students. Thus, requiring Defendant to act as LEA for M.M. as a student at Davidson School would require that Defendant treat M.M. as a student placed or referred by the District, and not as a parentally-placed private school student as agreed upon in the Agreement.

Plaintiffs counter that "[w]hen an LEA provides public funding for a private placement, the LEA through approval has 'placed or referred' a student for purposes of being an LEA under IDEA" and "[w]hen an LEA pays for a placement, the LEA has made a placement." (D.I. 49 at 6). Plaintiffs offer no legal support for their contention and their argument runs counter to the explicit language of the Agreement, which states that "[n]o payment to, or reimbursement for, private school tuition expenses pursuant to this Agreement shall alter" M.M.'s status as a parentally-placed private school student. (D.I. 44 at A123 ¶ 3).

The terms of the Agreement are clear and unambiguous. In acquiescing to the Agreement, Thomas, on behalf of himself and M.M., agreed that, should Thomas identify an acceptable private school for M.M. to attend, she would be considered a parentally-placed private school student. As discussed above, Delaware's education regulations, do not require Defendant to act as an LEA to parentally-placed private school students. As such, no reasonable reading of the Agreement could

---

[5] *E.g.* 14 DE Admin Code 923.46 provides:

> Each public agency that places a child with a disability at a private school or facility shall ensure the child is provided special education and related services in conformance with an IEP . . . and at no cost to the parents; is provided a FAPE; and has all of the rights of a child with a disability who is served by a public agency.

8

obligate Defendant to serve as an LEA for a private school chosen by Thomas pursuant to the terms of the contract.

Additionally, to the extent that Plaintiffs maintain their allegation that Defendant has refused to pay for M.M. to attend other education placements . . . or otherwise use any of the compensatory funding," Plaintiffs have failed to offer any evidence supporting this allegation. At his deposition, Thomas admitted that he has never submitted a reimbursement for any expenses related to M.M.'s education. (*See id.* at A84:19-23 ("Q: Well, Mr. Thomas, if we look at the settlement agreement have you ever submitted a request for payment in writing to anybody at Red Clay? A: No, I have not.")). Moreover, Sarah Celestin, the Director of Special Services for Defendant, has stated that "Darin Thomas has submitted no payment or reimbursement requests under the Agreement to the District" and should Thomas submit a request in the future, that request would be evaluated with respect to the Agreement and "if it qualified as a legitimate education expense and was supported by adequate documentation" the District would issue payment or reimbursement. (*Id.* A117 ¶¶ 39, 41). Plaintiffs have failed to come forward with any facts showing that there is a genuine issue for trial regarding a breach of Defendant's obligation to pay for legitimate educational expenses as required under the Agreement.

For these reasons, the Court finds that Plaintiffs have failed to establish a genuine dispute as to any material fact with respect to their claim for a breach of contract and thus summary judgment should be entered in favor of Defendant on Count I of the Complaint.

### B. Count II: Breach of Implied Covenant of Good Faith and Fair Dealing

In the Complaint, Plaintiffs allege that Defendant breached the common law implied covenant of good faith and fair dealing. Specifically, Plaintiffs argue that "it was understood there was an agreed common purpose to get M.M. in some other educational placement outside of the

Red Clay Consolidated School District" but the Defendant "refused to cooperate with Darin Thomas and refused to cooperate with the other educational placements that had been arranged by Darin Thomas." (D.I. 1, Ex. 1 ¶¶ 45, 47).

"Under Delaware law, an implied duty of good faith and fair dealing is interwoven into every contract." *Anderson v. Wachovia Mortg. Corp.*, 497 F.Supp.2d 572, 581 (D. Del. 2007). In general, the implied covenant requires "a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits" of the contract. *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 447 (Del. 2005) (citations omitted).

"In order to plead successfully a breach of an implied covenant of good faith and fair dealing, the plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Fitzgerald v. Cantor*, No. 16297, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998) (citing *Moore Bus. Forms, Inc. v. Cordant Holdings Corp.*, No. 13911, 1995 WL 662685, at *13 (Del. Ch. Nov. 2, 1995)). The covenant applies when "the contract is silent on the subject, revealing a gap that the implied covenant might fill." *Allen v. El Paso Pipeline GP Co.*, LLC, No. 7520, 2014 WL 2819005, at *10 (Del. Ch. June 20, 2014). The covenant, however, "does not apply when the contract addresses the conduct at issue." *Nationwide Emerging Managers LLC v. Northpointe Holdings, LLC*, 112 A.3d 878, 896 (Del. 2015); *see also Winshall v. Viacom Int'l, Inc.*, 55 A.3d 629, 637 (Del. Ch. 2011) ("[T]he implied covenant is not a license to rewrite contractual language just because the plaintiff failed to negotiate for protections that, in hindsight, would have made the contract a better deal.").

Here, Plaintiffs argue the Agreement implicitly includes an obligation that Defendant "cooperate with the other educational placements that had been arranged by Darin Thomas" by serving as the LEA for M.M. at Elwyn. (D.I. 1, Ex. A ¶ 47; *see also* D.I. 49 at 7 ("It is a reasonable expectation that Defendant will cooperate in its role as the LEA controlling the use of the compensatory fund.")). The contract, however, is not silent on the conduct at issue. As discussed above, the Agreement states that M.M. would be designated as a parentally-placed private school student should Thomas find a private school to admit her. (D.I. 44 at A123 ¶¶ 3, 4). Thus, the language of the Agreement indicates that it would be the responsibility of Thomas, not Defendant, to determine whether to place M.M. in a private school. Moreover, as discussed above, under the Agreement, if Thomas should place M.M. in a private school, she would be classified as a parentally-placed private school student, and as such the regulations would not require Red Clay to act as an LEA. As the Agreement contains explicit language regarding the conduct in question, it is not the role of the Court to rewrite contractual terms more amenable to Plaintiffs than those that were actually negotiated. For this reason, the Court finds that no reasonable jury could find that the Agreement included an implied covenant that Defendant serve as an LEA for M.M. at a private school of Thomas's choosing.

Moreover, rather than a failure to cooperate, the record before the Court indicates that Defendant's employees made efforts to assist Thomas in identifying alternative educational opportunities for M.M. by communicating with those private schools presented by Thomas to provide materials regarding M.M., (*id.* at A132, A137, A187, A232), identifying potential transportation providers, (*id.* at A130), and repeating that M.M.'s education in Red Clay Consolidated School District would continue until Thomas determined a legitimate education placement for M.M. (i*d.* at A295-97). The record further indicates that Thomas was made aware

of an alternative educational opportunity suitable for M.M. at the beginning of the process, but declined to pursue it. (*Id.* at A98-101).

Indeed, even if the parties had a "common purpose" of finding a suitable school for M.M., the record does provide any evidence that Defendant's conduct was arbitrary or unreasonable to such an extent that it prevented Plaintiffs from receiving the fruits of the contract. Thomas admitted that he did not seek to place M.M. on the waitlist for Devereux and did not return to the question of whether the other, unidentified school could have enrolled M.M. (*Id.* at A98-101, 105). Additionally, the record contains no evidence that Thomas took any additional action to find another private school suitable for M.M. after November 2016. (*Id.* at A66-67 #15).

For these reasons, the Court finds that Plaintiffs have failed to establish a genuine dispute as to any material fact with respect to the Count II and thus judgment must be entered in favor of Defendant.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. An appropriate order will follow.